FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 31 2010
P.M. ___
TIME A.M. ___

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

ARTURO FLORES,

                Petitioner,

    -against-

ROBERT E. ERCOLE, Superintendent,

                Respondent.

------------------------------------------------------------ x

06-CV-6751 (SLT) (JO)

**MEMORANDUM AND ORDER**

**TOWNES,** United States District Judge[1]:

Petitioner Arturo Flores ("Flores") seeks a writ of habeas corpus pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Flores was convicted of second-degree murder in New York State Supreme Court, Kings County. The trial court sentenced Flores to a prison sentence of 23 years to life. Flores appealed to the Appellate Division of the New York State Supreme Court, and the judgment of the trial court was affirmed. Flores moved for an extension of time in which to seek leave to appeal to the New York Court of Appeals, but the motion was dismissed as untimely. In his habeas petition, Flores challenges his conviction on three grounds: (1) legally insufficient evidence to convict; (2) a jury verdict that was the product of a coercive atmosphere; and (3) an excessive sentence. As explained below, Flores' petition is dismissed because his claims are procedurally defaulted due

---

[1]The Court would like to acknowledge the capable assistance of a student intern, Michael Berkovits, of Columbia University School of Law, in the preparation of this Memorandum and Order.

1

to his failure to timely seek leave to appeal to the New York Court of Appeals. Even if his claims were not procedurally defaulted, they would fail for additional reasons as set forth below.

**BACKGROUND**

At trial, it was not disputed that Flores shot and killed his landlord, Robert Palmiero, on August 18, 1993. The evidence at trial established that, on that afternoon, Flores and the decedent argued by the doorway of a Brooklyn pizzeria where Flores had previously worked. Juan Sanchez, who worked at the pizzeria, testified that the men were arguing over a rent deposit, which Flores wanted returned. During the course of the argument, Mr. Sanchez observed the decedent push Flores and then saw Flores draw a gun from his waist belt and shoot Mr. Palmiero from close range. Mr. Sanchez did not observe the decedent to be holding a gun. Peter Motisi, who also worked at the pizzeria, testified that he saw the two men in an agitated state, but did not pay attention to them until he heard a gunshot and saw the decedent walking into the pizzeria, holding his chest. Mr. Motisi also saw Flores running away following the gunshot.

Detective Brian O'Toole, a member of the Cold Case Squad of the New York City Police Department, testified that he arrested Flores in Passaic, New Jersey, on January 1, 2002. At the time, Flores was using the name "Javier Enrique Garcia." Flores was Mirandized and subsequently provided a written statement. In the statement, Flores explained that approximately one month prior to the killing, he and the decedent argued over a rent deposit. Flores further related that approximately 15 days later, the decedent and others returned to Flores's apartment and threatened members of his family, verbally as well as by holding pistols to their heads. The statement further explained that Flores's family left the apartment two days

later, and that Flores himself next encountered the decedent approximately 15 days later. According to the statement, the decedent told Flores that he would kill him and his entire family and punched him in the face. Flores then saw the decedent lift his shirt as if to pull out a weapon, whereupon Flores shot him in self-defense.

Flores, who did not testify at trial, introduced evidence that he was approximately five feet, five inches tall and weighed approximately 150 pounds, while the decedent was six feet, one inch tall and weighed 265 pounds. He argued that he shot and killed Robert Palmiero in self-defense after Mr. Palmiero threatened him and his family, argued with him, and reached for a weapon. The jury reached a verdict on October 1, 2002, convicting Flores of murder in the second degree.

On October 16, 2002, Flores was sentenced to a prison term of 23 years to life. Flores appealed, arguing that: (1) the evidence was legally insufficient to convict because the prosecution failed to disprove the defense of justification beyond a reasonable doubt, as required in New York, or in the alternative, the jury verdict was against the weight of the evidence in this regard; (2) the sentence imposed was excessive; and (3) the jury verdict was the product of a coercive atmosphere created by the trial judge. On December 12, 2005, the Appellate Division affirmed the judgment of the trial court, holding that: (1) Flores did not preserve his objection to the sufficiency of the evidence, but regardless, it was legally sufficient, and the jury's verdict was not against the weight of the evidence; (2) the claim of a coerced verdict was without merit; and (3) the sentence imposed was not excessive. *See People v. Flores*, 805 N.Y.S.2d 292, 292 (N.Y. App. Div. 2005).

Flores filed the instant petition under 28 U.S.C. § 2254 on December 18, 2006. *See* Habeas Pet.[2] After the Assistant District Attorney filed an opposition pointing out that Flores had failed to exhaust his claims in state court by failing to seek leave to appeal to the New York Court of Appeals, Flores sought a stay of the instant petition in order to do so. That request was denied, with leave to renew it with a showing of good cause for failing to exhaust the claims and a showing that the claims were not plainly meritless. After Flores renewed his request, but before this Court ruled on it, the New York Court of Appeals rejected, as untimely, Flores's petition for an extension of time within which to seek leave to appeal. *People v. Flores*, 9 N.Y.3d 832 (2007). This Court then denied the request to stay the instant petition, finding it moot.

**DISCUSSION**

Flores has petitioned for federal habeas relief *pro se*. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). The same standard holds for petitions for federal habeas relief. *See Samper v. Greiner*, 74 F. App'x 79, 82 (2d Cir. 2003); *Williams v. Edwards*, 195 F.3d 95, 96 (2d Cir. 1999) (per curiam). As such, Flores's petition is to be "interpret[ed] to raise the strongest arguments that [it] suggests." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006).

---

[2] "Habeas Pet." refers to Flores's Petition for a Writ of Habeas Corpus (Docket No. 1). "Resp. Habeas Opp." refers to Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, submitted February 16, 2007 (Docket No. 4).

## I. Flores's Claims are Deemed Exhausted & Procedurally Defaulted

A federal court may not grant habeas relief to a prisoner in state custody unless the prisoner has exhausted his state court remedies. *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005); *see also* 28 U.S.C. § 2254(b)(1). Exhaustion means that the prisoner no longer "has the right under the law of the State to raise, by any available procedure, the question presented." *Id.* at § 2254(c). To satisfy this requirement, "'state prisoners must give the state courts *one full opportunity* to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'" *Galdamez*, 394 F.3d at 73 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). "In New York, [one complete round requires] a criminal defendant [to] first appeal his or her conviction to the Appellate Division, and then [to] seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez*, 394 F.3d at 74.

When a petitioner has not presented a claim to a state court, but the claim is procedurally barred under state law "the habeas court theoretically has the power to deem the claim exhausted." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). But as the Second Circuit has explained:

> This apparent salve, however, proves to be cold comfort to most petitioners because it has been held that when 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted.

5

*Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991)); *see also Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).

Here, Flores failed to timely present his claims to the New York Court of Appeals and is now barred from doing so. He did not seek an extension of time in which to do so until more than fourteen months after the decision of the Appellate Division. A March 2006 letter from Flores's attorney indicates that his attorney was served with a copy of the decision and sent a copy of it to Flores via Flores's sister on January 3, 2006 with a cover letter "explaining what [he] had to do." (Letter from Eric G. Poulos, Esq. to Arturo Flores (March 27, 2006) (Docket No. 8 at 7)).

The New York Court of Appeals found Flores to have forfeited his right of appeal to that Court due to his untimely application. *See People v. Flores*, 840 N.Y.S.2d 564, 564 (N.Y. 2007). Flores's claims are therefore deemed exhausted for purposes of federal habeas review. *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d at 170;

"The doctrine of procedural default is based on considerations of comity and finality." *Id.* Federal habeas review, therefore, is not granted unless the petitioner "can either: (1) show cause for the default and actual prejudice as a result of the constitutional violation, or (2) demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Id.* (emphasis and internal quotation marks omitted); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001.)

Flores has not advanced a showing of cause and prejudice sufficient to establish that he should be relieved of his state procedural default. Nor has Flores contended that his continued incarceration would amount to a "fundamental miscarriage of justice." *See generally Cano v. Walsh*, 170 F. App'x. 749, 750-51 (2d Cir. 2006). The miscarriage of justice exception has a "narrow scope," *see Spence v. Superintendent*, 219 F.3d at 171, and is not warranted here. Even if Flores's claims were not procedurally defaulted, they would still fail for additional reasons as explained below.

## II. AEDPA Deference

Under AEDPA, courts will only grant a habeas petition based on a claim that is "adjudicated on the merits" in state court where the state court's adjudication of the claim either:

> "1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d).

An "adjudication on the merits is a substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001). A state court has adjudicated a state petitioner's claim on the merits when it "(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan*, 261 F.3d at 312).

Under Section 2254(d)(1) - the "contrary to" clause - a federal habeas court may grant the writ "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts facts that are materially indistinguishable from a

relevant Supreme Court precedent and arrives at a result opposite'" to that reached by the Court. *Bell v. Cone*, 543 U.S. 447, 452-53 (2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). Under Section 2254(d)(2) - the "unreasonable application" clause - a federal habeas court may grant the writ if the state court "'identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the petitioner's case.'" *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)). Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000) (O'Connor, J., concurring).

### III. Flores's Excessive Sentence Claim Fails

Flores contends that his sentence was excessive. *See* Habeas Pet. (citing to Flores's appellate brief). However, Flores was sentenced to 23 years to life in prison. *See* Sentencing Tr. 24.[3] This sentence was within the state's prescribed range for the crime for which he was convicted. *See* Trial Tr. 654 October 1, 2002 (defendant guilty of murder in the second degree); N.Y. Penal Law § 125.25 (McKinney 2002) (defining second-degree murder as a class A-1 felony); *id.* at § 70.00 (maximum sentence of life imprisonment, minimum period of imprisonment between 15 and 25 years for class A-1 felony). For purposes of federal habeas review, "[n]o federal constitutional issue is presented where . . . the sentence is within the range

---

[3] "Sentencing Tr." refers to the transcript of Flores's sentencing proceeding, held October 16, 2002. "Trial Tr." refers to the transcript of Flores's state court trial.

prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam). Accordingly, Flores's challenge to his sentence in this proceeding is without merit.

**IV. Flores's Challenge to the Sufficiency of the Evidence is Procedurally Barred**

Flores argues that the evidence was legally insufficient to disprove the defense of justification. However, Respondent correctly contends that this claim is procedurally barred because Flores failed to preserve it for appellate review. At trial, Flores failed to raise a sufficiency objection at the close of the People's case. (Trial Tr. 405 September 25, 2002.) After the defense rested, the defense did move for a dismissal of "the entire indictment" for failure to "prove a prima facie case." (*Id.* 420.) Defense counsel inquired whether the Court "wanted to hear [about] specific counts on the indictment," to which the judge responded that, "if [counsel had] a very specific argument to make, [he] better make it now." (*Id.*) Defense counsel then proceeded to argue about a count in the indictment relating to the criminal possession of a weapon before the judge denied the motion to dismiss. (*Id.* 420-22.) The parties and the judge then segued into a charge conference, during which the defense requested a charge on the defense of justification arising out of self-defense. (*Id.* 433.)

New York law requires that, "'even where a motion to dismiss for insufficient evidence [is] made, the preservation requirement compels that the argument be specifically directed at the alleged error.'" *Donaldson v. Ercole*, No. 06-5781-pr, 2009 WL 82716, at *2 (2d Cir. Jan. 14, 2009) (summary order) (quoting *People v. Hines*, 97 N.Y.2d 56, 62 (N.Y. 2001); *see also Farino v. Ercole*, No. 07CV3592, 2009 WL 3232693, at *8-*9 (E.D.N.Y. Sept. 30, 2009); *Fernandez v. Smith*, 558 F. Supp. 2d 480, 491 (S.D.N.Y. 2008).

On direct appeal, the Appellate Division held that "defendant's contention that the verdict was not supported by legally sufficient evidence is unpreserved for appellate review." *People v. Flores*, 805 N.Y.S.2d at 292. This constituted an "independent . . . and adequate" state ground for affirming the conviction. *Monroe v. Kuhlman*, 433 F.3d 236, 240-41 (2d Cir. 2006) (internal quotation marks omitted). Consequently, when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim based on a procedural default ordinarily qualifies as an independent and adequate state ground for denying federal review. *Acosta v. Artuz*, 575 F.3d 177, 184 (2d Cir. 2009); *see also Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005).

However, not every failure to contemporaneously object precludes federal habeas review. *See Monroe v. Kuhlman*, 433 F.3d 236, 244 (2d Cir. 2006). Rather, before a state procedural bar may effectively bar a federal habeas claim, courts must be satisfied that the specific procedural ground is "adequate to support the judgment." *Id.* at 240-41 (internal quotation marks omitted); *see also Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir.2003). To satisfy this inquiry, federal habeas courts look to whether "the state rule at issue . . . is firmly established and regularly followed." *Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008) (quoting *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir.2007)). The inquiry focuses on "guideposts" found in *Cotto* measuring "'the state interest in a procedural rule against the circumstances of a particular case,'" including:

> '(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore,

whether demanding perfect compliance with the rule would serve a legitimate governmental interest.'

Clark, 510 F.3d at 391 (quoting Cotto, 331 F.3d at 240).

New York's contemporaneous objection rule has been found to be a "firmly established and regularly followed New York procedural rule," noncompliance with which precludes federal habeas review absent a finding that such treatment would be "exorbitant" under the Cotto guideposts. Garvey v. Duncan, 485 F.3d 709, 718 (2d Cir. 2007); Richardson v. Greene 497 F.3d 212, 219 (2d Cir. 2007); Stewart v. Greene, No. 05 Civ. 0566, 2009 WL 4030833 at *14-*15 (S.D.N.Y. Nov. 19, 2009); Cherry v. Walsh, No. 09-CV-1452, 2009 WL 2611225, at *9-10 (E.D.N.Y. Aug. 25, 2009).

As to the first Cotto guidepost, the question of whether the trial judge "actually relied on" the procedural default "is less applicable in this case because the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court." Cotto v. Herbert 331 F.3d 217, 242 (2d Cir. 2003); see also Karimzada v. Cunningham, No. 09-CV-3317, 2010 WL 5979471, at *3 n. 1 (E.D.N.Y. Feb. 17, 2010). Moreover, the issue of "whether perfect compliance would have changed the outcome, "is less relevant" in evaluating the failure to preserve a claim." Stewart v. Greene, No. 05 Civ. 0566, 2009 WL 4030833 at *15 (S.D.N.Y. Nov. 19, 2009) (quoting Ashley v. Burge, No. 05 Civ. 4497(JGK), 2006 WL 3327589, at *5 (S.D.N.Y. Nov. 3, 2006)). As noted by the Court in Cotto, "the likely impact of a timely objection involves a certain degree of speculation." Cotto, 331 F.3d at 243; see also Donaldson v. Ercole, No. 06-5781-pr, 2009 WL 82716, at *2 (2d Cir. Jan. 14, 2009) (summary order).

As to the second Cotto factor, New York courts have consistently required compliance with the contemporaneous objection rule in similar circumstances. See People v. Hines, 97

11

N.Y.2d 56, 62 (N.Y. 2001); *see also Farino v. Ercole*, No. 07CV3592, 2009 WL 3232693, at *8-*9 (E.D.N.Y. Sept. 30, 2009); *Fernandez v. Smith*, 558 F. Supp. 2d 480, 491 (S.D.N.Y. 2008). Turning to the third *Cotto* guidepost, Flores did not "substantially comply" with the contemporaneous objection rule. His general motion to dismiss for the failure to prove a prima facie case was not sufficient to preserve his specific challenge to the sufficiency of evidence to disprove his justification defense. Defense counsel had an opportunity to make this specific argument when it would have been "uncomplicated and straightforward" to do so. *Monroe v. Kuhlman*, 433 F.3d at 245. His failure to raise it before the trial judge precluded appellate review. *People v. Hines*, 97 N.Y.2d 56, 62 (N.Y. 2001).

Flores has not asserted any cause or prejudice in connection with his failure to preserve this claim. Nor has he demonstrated a fundamental miscarriage of justice. Flores's challenge to the sufficiency of the evidence with respect to the defense of justification is procedurally barred because the failure to preserve his claim was an "independent . . . and adequate" state ground to support the conviction. *Monroe v. Kuhlman*, 433 F.3d 236, 240-41 (2d Cir. 2006) (internal quotation marks omitted).

### V. Flores's Insufficiency of the Evidence Claim Fails on the Merits

Even if it were not procedurally barred, Flores's insufficiency claim would fail on the merits. A petitioner raising an insufficiency claim bears a "very heavy burden." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (internal quotation marks omitted). While "the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged,'" *Jackson v. Virginia*, 443 U.S. 307, 315 (1979) (quoting *In*

*re Winship*, 397 U.S. 358, 364 (1970)), "[f]ederal courts are not forums in which to relitigate state trials." *Lonchar v. Thomas*, 517 U.S. 314, 340 (1996) (Rehnquist, J., concurring) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)). As such, a federal habeas court is not permitted "to make its own subjective determination of guilt or innocence." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (internal quotation marks omitted). Rather, when inquiring into sufficiency, a habeas court "must look to state law to determine the elements of the crime." *Ponnapula*, 297 F.3d at 179. The operative inquiry, then, "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

Under New York law at the time of Flores's trial, justification for the use of "deadly physical force" required a "reasonable belie[f]" by the defendant that the person upon whom such force was used was himself "using or about to use" deadly physical force. *See* N.Y. Penal Law § 35.15(2)(a) (McKinney 2002). In addition, the use of deadly physical force was not justified where the actor could have "retreat[ed]" with "complete safety . . . to himself . . . ." *Id.*

At trial, the testimony established that Flores was outdoors, in front of the pizzeria, during the time he was arguing with the decedent. (Trial Tr. 227, September 20, 2002; Trial Tr. 343, September 25, 2002). Neither of the two eyewitnesses at the murder scene testified that the decedent either had, or appeared to be reaching for, a gun at the time he was shot by Flores. (Trial Tr. 224-28, September 20, 2002; Trial Tr. 342-48 September 25, 2002). The only evidence to that effect came in a statement made by Flores to police investigators years after the shooting. (Trial Tr. 311-16 September 23, 2002.)

13

While the evidence did establish that the decedent pushed Mr. Flores in the course of the argument (Trial Tr. 344 September 25, 2002), there was nothing to suggest that this push supported a reasonable belief that the decedent was "using or about to use" deadly physical force. Nor was there evidence to show that Flores could not have left the scene of the pizzeria, as he stood outside during the argument. Here, on this record, viewing the evidence in the light most favorable to the prosecution, a reasonable jury could have rejected the defense of justification and found that the evidence was sufficient to support a conviction.

Flores's claim that the jury verdict was against the weight of the evidence, is not cognizable on habeas review. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) ("assessments of the weight of the evidence . . . are for the jury and not grounds for reversal" on habeas corpus review); *see also McKinnon v. Superintendent, Great Meadow Corr. Facility*, No. 08-2828-pr, 2009 WL 3863354, at *4 (2d Cir. Nov. 19, 2009) (summary order); *Correa v. Duncan*, 172 F.Supp.2d 378, 381 (E.D.N.Y. 2001). Regardless, this claim would be without merit for the reasons already discussed.

**VI. Flores's Claim that the Jury Verdict was Coerced Fails on the Merits**

Flores contends that the "jury verdict was the product of a coercive atmosphere that was created by the trial court." Habeas Pet. at 2. The Appellate Division rejected this claim on the merits, holding that "[t]he defendant's remaining contentions are without merit." *People v. Flores*, 805 N.Y.S.2d at 292. Although, in the instant petition, Flores does not specifically explain how the trial judge's actions were coercive, in his state court appeal, he focused on a particular instruction given after the jury expressed that they could not "come to a consensus in this case" and that there was "no real hope of reaching a twelve-person agreement about the

14

verdict." (Trial Tr. 566 September 30, 2002). In response, the judge told the attorneys outside of the presence of the jury that "I don't intend to give up so quickly, so we're going to be here tomorrow. We'll bring in the jury and explain that we're just getting started, all right." (*Id.* 564-65). Defense counsel replied, "Absolutely." (*Id.* 565) Then the judge told the jury:

> I don't doubt that you have been working very hard, but we're not prepared to give up. We believe you can reach a verdict. And we trust that if you continue your deliberations tomorrow that you will make some progress and so we're going to direct you to cease deliberating now [and] return tomorrow at 9:30 [to] resume your deliberation.

(*Id.* 566) The judge further stated:

> Once again, if there are any instructions or any evidence that will be of assistance to you, please don't hesitate to let us know. If you need any advice regarding the law itself that applies here, of course, you should just let us know your concerns and we will make every effort to assist you, but we are confident that you people can reach a decision in this case.

(*Id.* 566) The judge then excused the jury for the night. Deliberations continued the following day, and the jury requested a dictionary, a clarification of the charges, and then the "legal definition of probability." (Trial Tr. 612-613, 636 October 1, 2002.)

Although Flores argued to the Appellate Division that the trial judge gave an "unbalanced *Allen* charge," the judge was merely expressing confidence that the jury could reach a verdict and trial judges are not compelled to give a complete *Allen* charge at every sign of difficulty in the deliberations. "Although the use of an *Allen* charge has been consistently approved when a jury is apparently deadlocked, courts have refused to 'draw fine lines' that would 'circumscribe the trial court's discretion' in determining when and under what circumstances an *Allen* charge is appropriate." *Fox v. Poole*, No. 06-CV-856, 2008 WL

15

1991103, at *9 (E.D.N.Y. May 5, 2008) (quoting *United States v. Hynes*, 424 F.2d 754, 758 (2d Cir. 1970)); *see also Campos v. Portuondo*, 193 F. Supp. 2d 735, 746-47 (S.D.N.Y. 2002) ("The trial court retains discretion to determine under what set of circumstances to give an *Allen* charge."). In general, a trial judge is given "a broad range of discretion" in fashioning an appropriate response to a jury note. *Moore v. Scully*, 956 F. Supp. 1139, 1147 (S.D.N.Y. 1997); *see also Edwards v. Fischer*, 414 F. Supp. 2d 342, 358 (S.D.N.Y. 2006).

Even considering the instruction as a type of *Allen* charge, it was not improper or coercive in any way. As the Supreme Court has held, the issue of whether an *Allen* charge is coercive is assessed "in its context and under all the circumstances." *Lowenfield v. Phelps*, 484 U.S. 231 (1988) (quoting *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curiam). A fundamental requirement is "that when an *Allen* charge directs jurors to consider the views of other jurors, specific cautionary language reminding jurors not to abandon their own conscientious beliefs is generally required." *Spears v. Greiner*, 459 F.3d 200, 205-206 (2006). However, when a charge does not "urge the jurors to listen to the views of other jurors with whom they disagreed or attempt to persuade each other," this requirement is not implicated. *Id.* at 206. Here, the conduct of the jury in requesting further information the following day, and defense counsel's failure to contemporaneously object to the charge indicate that it was not coercive. *See id.* at 206-07. Accordingly, Flores's challenge to the trial judge's instruction is without merit.

The argument that the trial judge fostered a "coercive atmosphere" by instructing the jury to continue their deliberations until it announced a verdict after 10:00 p.m. is also without merit. "The period for which the jury is to be kept together is in the discretion of the trial judge."

*United States v. Minieri*, 303 F.2d 550, 556 (2d Cir. 1962) (citing cases). Flores's constitutional rights were not violated by the trial judge's actions. *DeGrandis v. Fay*, 335 F.2d 173, 1750 (2d Cir. 1964); *Ramirez v. Reynolds*, No. 00 CIV. 4787, 2001 WL 214238, at *9 (S.D.N.Y. Mar. 1, 2001).

**CONCLUSION**

Accordingly, the petition is denied, and the Clerk of Court is directed to close this case. The Court also declines to issue a certificate of appealability pursuant to 28 U.S.C § 2253(c)(2).

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated:  March 31, 2010
Brooklyn, New York